Paul Berthold and Dorothy Berthold v. Commissioner.
Berthold v. Commissioner
Docket No. 6108-64.
United States Tax Court
T.C. Memo 1967-102; 1967 Tax Ct. Memo LEXIS 160; 26 T.C.M. (CCH) 483; T.C.M. (RIA) 67102; May 9, 1967
*160 Paul A. Weick, Suite 518, Ohio Bldg., Akron, Ohio, for the petitioners. John P. Graham, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies in the income tax of petitioners for the taxable years 1957 through 1961 have been determined by respondent in the respective amounts of $6,439.26, $5,960.58, $1,697.60, $432.99, and $2,620.58. The parties have settled all issues raised by the pleadings with one exception which presents the question whether respondent has erred in treating certain advances made to petitioner Paul Berthold by Berthold Electric Company as dividends to the extent of corporate earnings and profits and as long-term capital gain to him to the extent such advances in excess of earnings and profits exceed his basis for his stockholdings in the company. Findings of Fact All stipulated facts are found accordingly. The petitioners, Paul W. Berthold (sometimes hereinafter petitioner) and Dorothy Berthold, filed a joint individual Federal income tax return for the years 1957, 1958, 1959, 1960, and 1961, using the cash method of accounting on a calendar-year basis, with the director of internal revenue at Cleveland, *161 Ohio. The Berthold Electric Company is an Ohio corporation having been incorporated on October 15, 1954. As of the time of the original issue of the stock, to date, the corporate records show that 150 shares have been issued and are outstanding. The shareholders and amounts of stock held have been and are as follows: Paul W. Berthold, 140 shares, Dorothy Berthold (wife), Linda Berthold (daughter), Bonnie Berthold (daughter), Sally Berthold (daughter), and Paul Berthold, Jr. (son), have 2 shares each. The Walberton Company is an Ohio corporation having been incorporated on May 3, 1954. The original issue of the stock, per the corporation record, was for 180 shares to Anthony Marzano, Walter F. Hay, and Paul W. Berthold, who held 60 shares each. In 1958, Paul W. Berthold acquired the 60 shares of stock owned by Walter F. Hay. In 1960, he acquired the 60 shares of stock owned by Anthony Marzano. From that time to the present, Paul W. Berthold, as owner of 180 shares, has been the sole stockholder in the Walberton Company. In 1957, 1958, and 1959, the Berthold Electric Company expended funds for the purchase of land and the construction of a building, title to which was in petitioner. *162 The amounts so expended were as follows: $16,492.36 in 1957, $36,973.38 in 1958, and $1,032.41 in 1959, totaling $54,498.18. [1]
Berthold Electric Company has declared dividends in respect of its stock, per its books, as follows: December 1955
25 cents per share
December 1956
$1.00 per share
December 1957
$2.00 per share
December 1958
75 cents per share
1959
No dividend
December 1960
$5.00 per share
December 1961
50 cents per share
December 1962
50 cents per share
December 1963
50 cents per share
1964
No dividend
1965
No dividend
Petitioners maintained no individual checking accounts during the years in question, but did maintain individual savings accounts. The following is a schedule showing accounts on the books of Berthold Electric Company and indicates the balance in each account as of the dates shown. The column entitled "Receivables" pertains to an account receivable from petitioner. The column entitled "Payables" pertains to an account payable to him. The column entitled "Building Account" pertains to an account entitled *163 "Building Accounts Receivable - Paul W. Berthold": Net due
Net due
Berthold
Building
Date
Receivables
Payables
P.W.B.
Electric
Account
Dec. 31
1955
($ 3,306.93)
$ 1,318.75
$ 4,625.68
1956
( 5,602.99)
1,318.75
6,919.74
1957
3,997.18
1,318.75
$ 2,678.43
$16,492.36
1958
( 12,451.86)
28,526.75
40,978.61
53,465.74
1959
8,562.48
28,526.75
19,964.27
54,498.18
1960
11,916.66
0
11,916.66
Closed out
1961
9,956.13
15,431.98
5,475.85
1962
( 1,434.85)
32,390.68
33,825.53
1963
0 [1]
44,469.01
44,469.01
1964
0 [1]
43,982.27
43,982.27
1965
3,531.72
47,700.96
44,169.24
Apr. 30
1966
7,486.37
48,700.96
41,214.59
During the years 1956 through 1960, Berthold Electric Company maintained an account on its books entitled "Building Accounts Receivable - Paul W. Berthold." The books and records of the corporation show that on December 30, 1960, the account carried a debit balance of $54,498.18. On December 30, 1960, the books and records of the corporation show a credit *164 to "Building Accounts Receivable - Paul W. Berthold" in the amount of $54,498.18, and a debit to the account entitled "Notes Receivable" in the same amount. The books and records of the Walberton Company show the assumption of the liability in an account entitled "Notes Payable." On September 15, 1960, petitioners transferred by warranty deed certain property to the Walberton Company, including the land and building referred to hereinbefore, and also including certain hotel property. The warranty deed referred to reflects no consideration other than nominal, as "for the consideration of ONE DOLLAR ($1.00) and other valuable consideration received" and is warranted as "free from all incumbrances whatsoever except taxes and assessments and restrictions of records and easements, and excepting the mortgage now existing upon the property." There was a mortgage upon the hotel property. Petitioner at no time executed any note or notes in favor of Berthold Electric Company in connection with the amounts advanced him by that company for the purchase of land and construction of the building, referred to above, nor did Berthold Electric Company at any time receive any notes receivable *165 signed by the Walberton Company. The Walberton Company's tax returns for the years 1962 and 1963 show only an account payable (unidentified) in the amount of $206.94 as of May 1, 1962, and show no account payable as of the end of its fiscal year 1963 on April 30, 1963, or as of May 1, 1963, or as of April 30, 1964. The company had a deficit in earned surplus and undivided profits of $16,655.34 as of April 30, 1962, for fiscal year 1963; a deficit in earned surplus and undivided profits of $18,373.01 as of April 30, 1963; and a deficit in earned surplus and undivided profits of $20,172.57 as of April 30, 1964. It reported a loss of $3,589.05 for its fiscal year ended April 30, 1963, and a loss of $1,799.56 for its fiscal year ended April 30, 1964, on its tax returns. It also reported a loss in its tax return for 1960. No payments of interest have been paid by petitioner or by the Walberton Company to Berthold Electric Company with regard to the alleged loan by Berthold Electric Company to petitioner. The minutes of the Berthold Electric Company contain an unsigned undated sheet purporting to reflect minutes of a meeting of the directors of Berthold Electric Company held October 15, 1957, as *166 follows: A meeting of Directors of the Berthold Electric Company was held with the following present: Paul W. Berthold, President Dorothy J. Berthold, Vice President Adeline Berthold, Secretary-Treasurer. It was voted that any amount the Berthold Electric Company advances Paul W. Berthold on loans is to be repayable at 4% interest from date of loan. 5% on unpaid balance. To be repayable five (5) years from January 1st, 1958. Neither Paul Berthold nor the Walberton Company has ever repaid to Berthold Electric Company any of the $54,498.15 [2] in funds paid by Berthold Electric as the cost of the property and building owned by petitioner and transferred on September 15, 1960, to Walberton Company by him. Ultimate Findings of Fact The amounts advanced petitioner by Berthold Electric Company in 1957, 1958, and 1959 for construction of an office-factory building were dividends to him in the respective amounts of $16,492.36, $10,331.49, and $1,032.41. The amount so advanced to petitioner during 1958 totaled $36,973.38, of which $11,641.89 exceeds Berthold Electric Company's earnings and profit and petitioner's basis for his stock therein and *167 constitutes capital gain for that year. Opinion The parties are not in dispute with respect to the amount of profit of Berthold Electric Company during any year at issue. No issue is raised with respect to petitioner's basis for his stock in that company. The sole issue is whether the advance made by the company to petitioner for the construction of a factory-office building during that period constituted loans as contended by petitioners or dividends and distributions of capital as determined by respondent. The facts here shown present a nearly classic example of the "corporate pocketbook." It is the burden of petitioners to show by a preponderance of evidence that regardless of appearances the advances made by the corporation to petitioners were other than dividends or distributions of capital as has been determined by respondent. The record discloses that petitioner was nearly the sole stockholder of the corporation, the only exception being nominal holdings of 2 shares each by members of his immediate family. Neither petitioner nor his wife maintained checking accounts. For lack of specific proof to the contrary it would appear that they had no need of checking accounts because *168 it might well be that all their purchases were made through the corporation. We note the typical open account dealing between the corporation and petitioner, the lack of any corporate action formally authorizing loans to petitioner and the absence of any notes or other evidence of indebtedness between them. It is true that there is in existence minutes of a meeting of the board of directors held October 15, 1957, which indicate that - It was voted that any amount the Berthold Electric Company advances Paul W. Berthold on loans is to be repayable at 4% interest from date of loan. 5% on unpaid balance. To be repayable five (5) years from January 1st, 1958. But reliance upon such evidence to establish that the amount advanced to petitioner for the cost of construction of a factory and office was a loan is misplaced. The minutes make no specific reference to such advances. The corporation is an accrual basis taxpayer, yet it has never accrued interest upon such advances in its books of account. Although the advances had not been repaid within "five (5) years from January 1st, 1958," the record discloses no corporate action of any kind to extend the repayment date. From these facts *169 we can only conclude that, petitioner being in control of the management of the corporation, neither he nor the corporation had any intention that such advances constituted loans at the time they were made. It seems inconsistent to us that petitioner had a need to borrow from the corporation in order to construct the new factory and office building when such evidence as exists tends to show that he may have had sufficient personal funds for that purpose. His advances to the corporation are shown by the record to have been rather consistent and in substantial amounts. One of the important indications of a loan is the financial inability of the borrower to carry out a specific purpose. , , affirming a Memorandum Opinion of this Court, yet we have no reason to believe from this record that petitioner was not amply able to finance the construction of this building. We have considered the statement of petitioner to the effect that he considered the building advances to be loans, but the facts or absence of facts discussed above are convincing that such expressed intention is only an *170 afterthought on petitioner's part. The dividends paid by the corporation for certain years are for the most part so nominal as to carry little weight in overcoming the correctness of respondent's determination that the building advances were in reality distributions of dividends to the extent of corporate profits and distributions of capital to the extent they exceed such profits and petitioner's basis therein. Petitioner's transfer of title to the factory and office building property to his wholly owned corporation, the Walberton Company, likewise fails to convince us that the building advances were loans when made. In fact the absence of any mortgage cited as an encumbrance in the deed, whereby repayment of the advances here involved, if in truth loans, might be said to be secured, militates strongly against petitioner's position. It seems incredible to us that a corporation lending construction funds for a building would do so not only without any evidence of indebtedness representing the loaned funds, but also without a lien on the building to secure repayment at least of the principal. For lack of sufficient evidence to overcome the presumption of the correctness of respondent's *171 determination and because all other issues raised by the pleadings have been settled by the parties by stipulation, we will enter our decision for respondent under Rule 50. Decision will be entered under Rule 50. Footnotes
1. The parties obviously have made a mistake in addition as the amounts total $54,498.15 rather than $54,498.18↩
1. During 1963 and 1964 the company closed out all accounts, both payable and receivable, into one account.↩
2. Note 1, supra.↩